**ST. LOUIS COUNTY, Missouri, (Plaintiff) Appellant,**

v.

**Louis R. SZOMBATHY et al. (Exceptions of County and Daniel and LaVina Hickey), (Defendants) Respondents.**

**No. 56890.**

Supreme Court of Missouri, Division No. 1.

July 16, 1973.

George F. Gunn, Jr., St. Louis County Counselor, Don R. Williams, Associate County Counselor, Clayton, for appellant.

Mogab, Hughes & Green, Richard L. Hughes, St. Louis, for defendants-respondents.

HOLMAN, Presiding Judge.

In this condemnation suit the commissioners appointed by the circuit court awarded defendants, Daniel and LaVina Hickey, the sum of $1,200. Exceptions were filed by both plaintiff and defendants. The subsequent trial resulted in a verdict and judgment for defendants in the sum of $1,875 and plaintiff has duly appealed therefrom. We have jurisdiction because the County is a party, and the notice of appeal was filed prior to January 1, 1972, the effective date of new Art. V., § 3, Mo.Const., V.A.M.S. We affirm.

Defendants' two-story brick and frame residence is located at the intersection of Margo Street and Airport Road in St. Louis County. This suit was filed in connection with the widening and improvement of Airport Road. The County condemned ten feet of additional right-of-way from defendants and also a ten-foot temporary construction easement.

LaVina Hickey was the only witness for defendants. She stated that they were greatly inconvenienced during the six months involved in the construction; that their yard was muddy, and that they could not use their driveway for six weeks; that after the work was completed a redbud

tree had died; that their basement had been dry before the work was done but afterwards had water in it. This witness further testified that the reasonable value of the property before the taking was $20,000 and after the taking, was $14,000.

Plaintiff presented evidence to the effect that the drainage problem was not caused by the construction work and that the red-bud tree was still alive (the trial was in February). Two real estate appraisers also testified for plaintiff. Stephen Thornton stated that the fair market value of the property before the taking was $22,000 and that it was $21,700 after the taking. Tom McReynolds fixed the value at $21,150 before, and $20,900 after the taking. As indicated, these witnesses fixed the damage at $300 and $250, respectively.

On this appeal plaintiff contends that the verdict was excessive and that such resulted from four prejudicial incidents that occurred during the trial.

■ Plaintiff first contends that the trial court erred in overruling the objection to the following statement of defendants' attorney during voir dire examination of the jury panel: "MR. HUGHES: The people whose property was taken are Mr. and Mrs. Daniel Hickey, the parties here —Mrs. Hickey was seated in the first row. She is a co-owner with her husband of the property at 818 Margo. Do any of you recognize Mrs. Hickey? Her husband is Daniel Hickey. He is physically disabled. He will not be here." We rule this contention against plaintiff. While it is not proper to appeal to a jury for sympathy because of a physical disability, in this instance it was appropriate to explain the absence of Mr. Hickey. The jury would naturally expect the owners of the property to be present, and we see no objection to permitting an explanation for his absence. We also note that no details were given and it was not stated whether the disability was temporary or permanent. The statement was proper and, in our judgment, was not prejudicial.

■ The next complaint of plaintiff relates to a statement by defendants' attorney at the beginning of his closing argument, as follows: "MR. HUGHES: I'm surprised Mr. Williams would classify this as 'shake down.' * * * Let me remind you gentlemen and Mr. Williams [that] Mrs. Hickey is not here by choice, but is dragged in here by St. Louis County. MR. WILLIAMS: I object to that. The moving party is here of her own choice. [No ruling.]" In the situation here presented we do not think the statement about being "dragged" into court was improper. It was obviously made in retaliation to some argument made by the attorney for the plaintiff. We do not know just what that statement was because plaintiff (appellant) has not seen fit to include the argument of its attorney in the transcript. Several of the points here involved relate to the argument of defendants' attorney and in that situation appellant should have included the entire argument in the transcript.

■ Plaintiff also contends that the court erred in permitting the following argument by defendants' counsel: "MR. HUGHES: * * * The problem with David and Goliath confrontations, I think, should be obvious from the witnesses you have heard here. The County on one hand with its massive resources—MR. WILLIAMS: Your Honor, I object to this as highly improper and prejudicial—the comparison of the position of two parties. THE COURT: Overruled. Proceed. MR. HUGHES (continuing): —and the free availability to a multitude of alleged specialist employees or fee employees on the one hand—the individual with the problems of presenting whatever testimony the individual can put together on the other. * * * And, in reaching those judgments, the inequity in terms of availability of testimony, and what have you, should be weighed. Mr. Spencer, the County Engineer, he is on salary. He comes in. Mr. Russell, the Agronomist—he does fee Agronomy for the County. He comes in. Mr. Thornton, who is an appraiser for the

County, he comes in. Mr. McReynolds * * *. Its the very expense involved in presenting this testimony to you. I offer this only as some way of a potential explanation, or amelioration, for the lack of experts on behalf of Mrs. Hickey."

It is our opinion that the trial court should have sustained the objection made by plaintiff's counsel. State ex rel. State Highway Comm. v. Turk, 366 S.W.2d 420 [6] (Mo.1963). However, in the situation presented we do not think the error was prejudicial. In the circumstances of this case defendants apparently deemed it inadvisable to spend money in attempting to procure an expert witness. Mr. Hughes stated very frankly that he was trying to explain why defendants did not have any expert testimony while the County had presented a number of expert employees. As indicated, we do not think it prejudiced plaintiff's case for counsel to call attention to the situation in the manner he did.

█ It is also contended that the trial court erred in overruling the objection to the following argument: "MR. HUGHES: Mr. Spencer told you that the proper way to show runoff is by contour maps, they have to be available. They have every other map known to man. They could have brought these in to prove it if they had seen fit. They didn't bring them in. MR. WILLIAMS: I object. Such remarks (sic) are available as public records. THE COURT: I overrule it." It is said that there was no evidence of the existence of contour maps and thus the argument created a false issue. We note that contour maps were mentioned a number of times in the testimony. Mr. Spencer, a design engineer for the County, explained the various maps and plans that were brought in by plaintiff. He said the information shown by contour maps could be obtained from the "cross-sections." The situation regarding the maps was obviously confusing. There was a great deal of testimony concerning the water flow in the area and it would not appear that this incident would be prejudicial in any event. We prefer, however, to base our ruling on the fact that the trial court is given a considerable discretion in controlling argument and we do not find any abuse of that discretion in this instance. We rule this point against plaintiff.

█ Finally, plaintiff submits that even if none of the matters it has complained of is sufficient individually to require a reversal, their collective impact should be held to require a new trial. What we have heretofore said will indicate our view that such is not the case, and the point is accordingly overruled.

Judgment affirmed.

All concur.